PEARSON, Judge.
The plaintiffs, Clarence G. Smallwood and his wife, sought to recover the money they paid for stock which was never delivered. They appeal from a final judgment entered by the trial judge in favor of defendant, Moretti. We hold that the summary judgment was proper.
The pleadings, depositions, and matters contained in a stipulation were considered by the trial judge. From these we ascertain that Moretti was a shareholder in a corporation known as Re-Mark Chemical Co. Moretti, by a separate document containing a written assignment, did assign to the Smallwoods 5,000 shares of “preferred, Class A stock of Re-Mark Chemical Co. standing in my name or set aside for me.” The document also contained a power of attorney to the Smallwoods to transfer the shares on the books of the corporation. At the time of the execution and delivery of this assignment, the defendant had not yet received his stock certificates from the corporate treasury. He had been advised, however, by letter from Re-Mark’s counsel that the 5,000 shares were set aside for him on the books and records of the corporation. At the time the Smallwoods accepted the assignment and paid $15,000 for the undelivered shares they knew of the aforementioned letter. Moretti then instructed Re-Mark by letter to issue the 5,000 shares of stock to the Smallwoods. A delay was occasioned by stock registration problems and the certificates were not issued at the time suit was filed. When dividends were declared on four separate occasions, Moretti paid them to the Smallwoods, who in each instance accepted them.
Early in 1958 the Re-Mark Chemical Co. became insolvent and underwent reorganization under Chapter X of the Bankruptcy *629 Act. It was not until after the institution of such proceedings, and the ensuing reduction in the value of the stock, that the plaintiffs undertook to cancel the sale. This suit was filed and during the pendency of the litigation, the reorganization of Re-Mark was accomplished.
Appellants’ primary contention is that they were entitled to rescind the agreement and recover at law the entire purchase price because Moretti failed to deliver the stock certificates. In this connection, it is urged that section 614.03, Fla.Stat., F.S.A., makes an assignment of stock, without delivery ineffectual. The subsection of this statute pertinent to the factual circumstances of this case provides:
“(1) Title to a stock certificate and to the shares represented thereby can be transferred only:
% s|c ‡ H*
“(b) By delivery of the certificate and a separate document containing a written assignment of the certificate, or a power of attorney, to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby ; such assignment or power .of attorney may be either in blank or to a specified person. * *
This subsection, as pointed out by appellants, sets forth the necessary steps to transfer title to certificates and shares by separate document. It is apparent that one of the essential requirements for an effectual transfer has not been met, i. e., the necessity of delivery. An opinion of the Attorney-General of Florida held that the uniform stock transfer law contemplates delivery of the stock certificate as essential to the transfer of the legal title to corporate stock. 1960 Op.Atty.Gen., 060-89, April 27, 1960. (Emphasis added.) We are in accord with the statement in the usual instances, where the right of a corporation to be protected from conflicting claims as to ownership of stock is involved, where the rights of innocent purchasers of stock may be involved, or where rights of attaching, garnishing or execution creditors may have to be determined, because section 614.03(1) (b), supra, drafted from the Uniform Stock Transfer Act, § 1, 6 Uniform Laws Annotated indicates that a purpose of this section of the act is to protect the classes enumerated, above. But in the instant case we are dealing with the rights between the transferor and the transferee, where a transfer of title to certificates and shares was ineffectual because of failure of delivery. Thus the attempted transfer comes within the scope of section 614.12, Fla.Stat., F.S.A., which provides:
“An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts.”
This section expressly provides that the promise, if any, shall be determined by contract law. Therefore it becomes necessary to refer to the circumstances surrounding the attempted transfer and to determine the intention of the parties regarding the transfer of title. The facts showed that the Smallwoods paid $15,000 for a document purporting to sell and assign to them the shares in question. From certain correspondence it is also shown that Re-Mark had set aside on its books 5,000 shares of stock in Moretti’s name and that the latter had instructed Re-Mark to issue the 5,000 shares to the Smallwoods. Further, the Smallwoods accepted dividend payments from Moretti on four separate occasions. The fact that the shares were never issued is immaterial, because it is possible under some circumstances for one to own stock in a corporation though no certificate has been issued to him. Greenspun v. Greenspun, Tex.Civ.App.1946, 194 S.W.2d 134, 137. From this recapitulation *630 of the facts, it is manifestly evident that the parties intended a transfer of the shares.
Other jurisdictions interpreting corresponding sections of the Uniform Stock Transfer Act have held that an attempted transfer (such as the one in the instant case) causes the equitable title to pass to the transferee with an implied promise to transfer legal title to him, enforceable in accordance with the law of contracts.[1]
Therefore the failure of delivery did not constitute a breach upon which the Small-woods could rescind the contract and recover at law their payment for the shares. The trial court did not commit error in entering summary judgment for the defendant.
Affirmed.
HORTON, C. J., concurs.
CARROLL, CHAS., J., dissents.

. See cases cited at 6 U.D.A., Uniform Stock Transfer Act § 10.